## W. D. Hamilton, for use, *v.* Oliver McClintock & Co., Appellants.

*Promissory notes—Sale—Collection of notes—Due diligence.*

Where the seller of promissory notes agrees as a part of the contract of sale to use all due diligence to collect them, and to pay the proceeds of the same to the purchasers when collected, he is bound to the observance of the utmost good faith and the exercise of all due diligence in the performance of the duty which the contract imposes.

The seller of promissory notes agreed with the purchaser to use all due diligence in collecting them. The seller had an additional claim against the maker of the notes. Subsequently to the sale he signed a composition agreement with other creditors of the maker by which the creditors were to accept fifty per cent of their claim in settlement. The seller lumped his own claim with the notes, but had a secret agreement with the debtor by which his own was to be paid in full. The purchaser of the notes, without knowledge of this secret agreement, acquiesced in the settlement, and was paid fifty per cent of the notes. It also appeared by some evidence that the maker of the notes had real estate out of which the notes, in the exercise of due diligence, could have been collected. In an action by the purchaser of the notes against the seller to recover the unpaid portion of the notes, *Held*, (1) that the secret agreement of the seller with the maker was a fraud upon the purchaser; (2) that the purchaser under the circumstances did not waive his right to due diligence on the part of the seller, by accepting fifty per cent of the amount of the notes; (3) that the evidence as to whether the notes could have been collected from the real estate was for the jury; (4) that the fact that the seller's individual claim against the maker was for goods sold before the notes in question were given to a partner for his interest on retiring from partnership with the maker, was not a defense to the suit; (5) that a judgment on a verdict for plaintiff should be affirmed.

Argued Nov. 4, 1885. Appeal, No. 218, Oct. T., 1895, by defendants, from judgment of C. P. No. 3, Allegheny Co.,

Aug. T., 1891, No. 189, on verdict for plaintiff.   Before Sterr-
rett, C. J., Green, Williams, McCollum, Mitchell, Dean
and Fell, JJ.   Affirmed.

Assumpsit on an agreement in writing.   Before Kennedy, P. J.

At the trial it appeared that J. F. Haney, J. P. Learn and
George Snyder were partners.   On February 1, 1886, Haney
retired from the firm, and Learn and Snyder bought his inter-
est, giving him in payment therefor five promissory notes aggre-
gating $2,800.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows :

[The plaintiff goes further and says, even if the fact be as
the defendants contend, that their claim was against a different
firm and that they received moneys and securities from different
parties than were given in settlement of the claims against Learn
& Snyder, and that even if they were not bound to disclose the
fact that they were getting 100 cents on the dollar while taking
50 cents on this, that still there was property enough there be-
longing to the firm of Learn & Snyder, and Learn and Snyder
individually, to pay these claims, and if they had exercised due
diligence they could have collected 100 cents on the dollar.   If
you should find such to be the case, then your verdict should be
for the plaintiff for whatever they could have collected from the
property of the firm of Learn & Snyder, or the estates of Learn
and Snyder individually.] [4]

Plaintiff's points were, among others, as follows :

4. That as surviving partner, Learn could only assign part-
nership property and his individual property.   If, therefore, the
jury find that Learn had individual assets, it was the duty of
defendants to collect the Haney notes from such individual
assets, and a failure to do so was a breach of duty and defend-
ants are liable.   *Answer :* This point is affirmed, if you find
that by the use of due diligence the defendants could have found
such assets. [5]

5. If the jury find that there were individual assets of George
Snyder, and that upon the settlement with J. P. Learn of the
notes for only 50% as claims against the firm of Learn & Sny-
der, those notes were delivered and surrendered to him without
any effort to collect the same from such separate estate of Sny

der, it was a breach of duty and defendants are liable for all loss incurred thereby. *Answer :* This point is affirmed, if, as I have stated before, you find that by the use of due diligence the defendants could have discovered such assets. [6]

Defendants' points, among others, were as follows :

1. Under all the evidence the verdict should be for the defendants. *Answer :* This point is refused. [1]

4. It being conceded that the defendants had no other claim against Learn & Snyder than the one settled for with Hamilton's attorney, but that they had a claim against the firm of Learn, Snyder & Co., composed of J. B. Learn, George Snyder, and J. F. Haney, the use plaintiff, they were not under obligations to disclose to plaintiffs the fact that they had received payment in full for said claim, and such silence would be no ground for action. *Answer :* This point is affirmed, unless you find that the negotiations for the settlement were made entirely with Learn, and the moneys for the payments derived entirely from him, in which case the defendants were in duty bound to disclose to plaintiff the fact that they were receiving payment in full of their claim. [2]

3. If the jury believe from the evidence that W. D. Hamilton, the agent of the use plaintiff, by Thomas D. Chantler, Esq., his attorney, gave his consent to and approval of the settlement with Learn & Snyder, said settlement is binding upon the plaintiff, unless the defendants or their attorney were guilty of fraud and concealment in obtaining said approval, and the burden is upon the plaintiff to prove fraud. *Answer :* This is affirmed. If, however, the defendants relied upon this consent and approval of the settlement by the plaintiff's attorney, as a defense in this case, it was their duty to disclose all the facts and circumstances, and the burden of proving that they did so disclose all the facts is upon them. [3]

Verdict and judgment for plaintiff for $2,114. Defendants appealed.

*Errors assigned* were, (1, 2, 3, 5, 6) above instructions, quoting them.

*W. K. Jennings,* for appellants.

*Magnus Pflaum,* for appellee.—It is a fraud upon creditors

where one of them, parties to a composition agreement, receives more than the sum therein agreed upon: Patterson v. Boehm, 4 Pa. 507; Mann v. Darlington, 15 Pa. 310; Stuart & Brother v. Blum & Simson, 28 Pa. 225; Louchheim Bros.' App., 67 Pa. 49; Lee v. Sellers, 81* Pa. 473.

OPINION BY MR. JUSTICE McCOLLUM, March 2, 1896 :

When Haney retired from the firm of Learn, Snyder & Co., his copartners retained all its assets and assumed all its liabilities, and thenceforth the business was carried on in the firm name of Learn & Snyder. While Haney remained liable to the creditors of the old firm for the debts incurred by it, as between him and his copartners the primary liability was on them. For his interest in the firm he received the notes of Learn & Snyder, which he indorsed and delivered to Oliver McClintock & Co. in payment for goods which he purchased from them on his own account. The firm of Learn & Snyder was dissolved by the death of Snyder about two months after it was formed, and Learn, as surviving partner made an assignment of its assets for the benefit of its creditors. Soon after the assignment W. D. Hamilton bought of McClintock & Co. the Learn & Snyder notes which Haney had transferred to them as above stated, paying one half the amount of the notes at the time of the purchase and giving his bond for the other half. The purchase involved an agreement by McClintock & Co. to use all due diligence to collect the notes from " the assignee of Learn & Snyder and the estate of George Snyder dec'd.," and to pay to Hamilton the proceeds of the same when collected. This action was brought by Hamilton to recover the loss he alleges he sustained by the failure of McClintock & Co. to comply with their agreement respecting the collection of the notes. It is very clear, and it is not disputed, that their agreement bound them to the observance of the utmost good faith and the exercise of all due diligence in the performance of the duty it imposed. The controlling question in the case is whether this duty was properly discharged by them. If it was the plaintiff had no cause for complaint, and if it was not he was entitled to recover from them the loss he sustained by reason of their nonperformance of it. The question was for the jury if the evidence was sufficient to warrant a finding that there was a want of good faith

and due diligence on the part of McClintock & Co. in the collection of the notes.

It appears that an arrangement was effected between Learn and the creditors of Learn & Snyder by which the creditors agreed to accept from Learn 50 per cent of their respective claims in full thereof, " payable twenty-five per cent, cash, October 30th, 1886, ten per cent in six months, and the balance, fifteen per cent in twelve months thereafter to be secured by notes of Learn, with approved endorser." McClintock & Co., representing that they were creditors of Learn & Snyder to the amount of $4,029.57, signed the composition agreement. This amount included the notes they held for Hamilton, and their own claim, but there was nothing in the agreement to show that any one had an interest in it except themselves. They say that Hamilton concurred in their view that an acceptance of 50 per cent in settlement of the claims was advisable, and that they collected and paid to him the full amount he was entitled to receive under the compromise. It is true that Hamilton received from them 50 per cent of the amount of his notes, less their commissions for collection, but he did not know when he received it, or when he concurred in their acceptance of it, of any want of diligence or fidelity on their part in the performance of their duty under their agreement with him. This litigation was born of the discovery that while McClintock & Co. collected and accounted for 50 per cent on Hamilton's share of the amount represented in the composition agreement as their claim against Learn & Snyder, they collected 100 per cent on their share of it. It was a discovery which was suggestive of unfaithfulness on their part because it showed that while they agreed with the other creditors to accept 50 per cent of their claim in satisfaction of it they had a secret agreement with Learn under which they were paid the full amount of it. It was specially indicative of bad faith towards Hamilton because it was a plain discrimination against his interest which it was their duty to protect. The concealment by them of their secret agreement with Learn may be regarded as intentional because it was obviously necessary in order to affect a compromise with the other creditors on the basis of 50 per cent of their claims. We think therefore that their conduct in regard to the settlement with Learn constitutes a sufficient answer to so much of their defense as is based on the theory that Hamilton's acceptance of 50 per cent of his claim is a bar to this suit.

By the plain terms of the composition agreement McClintock & Co. were bound to accept 50 per cent of their claim of $4,029.57 in full satisfaction of it, and they have furnished no explanation of their secret agreement with Learn which justified them in making it and concealing it from the other creditors. They were paid from the same source and in the same manner as the other creditors were, and their attempt to show they were not so paid was a failure. It was not a satisfactory answer to their representation in the composition agreement, nor to their secret stipulation with Learn, to say that the most of their share of the claim they presented against Learn & Snyder was for goods sold before Haney's retirement from the firm. They did not look to him for any portion of their claim and it was as clearly a debt of Learn & Snyder as any other claim embraced in the settlement was.

We think that in view of the circumstances to which we have referred it cannot be justly said that Hamilton waived his right to due diligence on the part of McClintock & Co. in collecting the notes. As they concealed from him their agreement with Learn, his acceptance of 50 per cent of his claim cannot be regarded as a waiver of this right.

There was some evidence that Snyder was a tenant in common with Learn of several pieces of real estate out of which it is claimed the notes, in the exercise of due diligence, could have been collected. This evidence was for the jury.

We discover nothing in either of the specifications of error which calls for or would justify a reversal of the judgment. The answer to the defendants' third point, if inaccurate, was harmless, because the only fraud alleged was the concealment from the plaintiff of the defendants' secret agreement with Learn, and this concealment was shown or admitted by both parties.

Judgment affirmed.